GRAND SHEET METAL PRODUCTS COMPANY *v.* PROTECTION MUTUAL INSURANCE COMPANY ET AL.

SUPERIOR COURT  FAIRFIELD COUNTY  FILE NO. 160336
AT BRIDGEPORT

Memorandum filed February 24, 1977

*Carmody & Torrance,* and *Koskoff, Koskoff, Rutkin & Bieder,* for the plaintiff.

*Halloran, Sage, Phelon & Hagarty,* for the named defendant.

*Bai, Pollock & Dunnigan,* for the defendant Wilson & Allen, Inc.

HULL, J. The plaintiff, seeking recovery against its claimed fire insurer and insurance agent, pleads a cause of action against the insurer Protection Mutual Insurance Company, beyond the claimed amount of the policies in question, on the grounds of bad faith and oppressive business conduct. The portions of the complaint attacked are paragraph twelve of the first, second and third counts, paragraph thirty of the ninth count and paragraphs twenty-two through twenty-four of the tenth count.

The plaintiff is asserting a tortious breach of contract based on a tort claim separate from any claim for breach of contract. In so doing, the plaintiff is attempting to import into Connecticut law the theory, if not the exact language, of the landmark California case of *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal. 3d 566, wherein the California Supreme Court held (p. 575): "It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment

of the claim of its insured, it is subject to liability in tort." In so holding, the California court built on its previous position that the failure of an insurer to accept a reasonable settlement within the policy limits, in violation of its duty to consider in good faith the interest of the insured in settlement, would make the insurer liable for the entire judgment against the insured if over the policy limits.

The *Gruenberg* court summed up (p. 573) the application of the good-faith-settlement rule to claims of an insured against an insurer as follows: "Thus in *Comunale* and *Crisci* we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing' . . . [*Crisci* v. *Security Ins. Co.*, 66 Cal. 2d 425, 430]. In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."

The question raised by the demurrer is whether Connecticut law is or ought to be in conformity with *Gruenberg* and the authority supporting it. Each party admits that there is no Connecticut authority either supporting or opposing such an implied duty of good faith and fair dealing between the insurer and the insured.

Clearly the obligation to accept a good-faith settlement within the policy limits is the law in Connecticut. *Hoyt* v. *Factory Mutual Liability Ins. Co.,* 120 Conn. 156, 159; *Bartlett* v. *Travelers Ins. Co.,* 117 Conn. 147, 155. The court is faced with the difficult problem of deciding whether it should knock out the type of claim raised in *Gruenberg* because there is no case approving such a cause of action in Connecticut, or, in view of the lack of a clear prohibition against such claims in Connecticut, whether it should consider the matter in the light of developing law and sound public policy. The court will choose the latter course. In the light of this approach it is worth noting that *Gruenberg* itself was a reversal of a dismissal after the sustaining of a demurrer, as was *Garthwait* v. *Burgio,* 153 Conn. 284, in which the Connecticut Supreme Court brought to life the law of strict products liability in Connecticut. Absent some bar, which does not exist here, is it not also the duty of the trial court to forge new paths if based on convincing legal theory?

The defendant argues, citing the dissent of Roth, J. in *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal. 3d 566, 581, that to make the jump from good faith and fair dealing as regards third parties to such liability for first-party dealings requires a fiduciary relationship. But that is not so if sound logic dictates that the *Gruenberg* obligation is necessarily implicit in every insurance contract. The developing theories

in this area often represent an overlapping of contract and tort law with some inevitable confusion. One approach to the problem may be an extension of compensatory and punitive damages in contract actions. This court, however, prefers to follow *Gruenberg* in focusing on a distinct tort cause of action.

Gruenberg's cocktail lounge and restaurant were destroyed by fire on November 9, 1969, and shortly thereafter he was arrested by a member of the arson detail. The insurer's adjuster told an arson investigator that Gruenberg was carrying excessive fire insurance on the premises. Charges were dismissed and Gruenberg then agreed to an examination by the insurer, which he had earlier refused because of the pending criminal charges. The insurer denied liability and refused to pay. Gruenberg's suit claimed that the defendants wilfully and maliciously entered into a scheme to deprive him of the benefit of his insurance policies by falsely charging a motive to commit arson and encouraging criminal charges against him. As indicated, the California Supreme Court found that in every contract of insurance the duty "to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy" was necessarily implied. *Gruenberg* v. *Aetna Ins. Co.,* supra, 573.

The first out-of-state case to rely on *Gruenberg* and its California progenitors is *Ledingham* v. *Blue Cross Plan,* 29 Ill. App. 3d 339. That case involved a denial of health insurance benefits and, while adopting the *Gruenberg* rationale, it relied heavily on certain strong health insurance precedents in both Illinois and California. A later case, *United States Fidelity & Guaranty Co.* v. *Peterson,* 91 Nev. 617, is of particular cogency in the present

case. The insured Peterson sued the insurer to recover consequential damages because of the insurer's bad-faith refusal to pay for damage caused by the insured during construction, which refusal caused the insured to lose his business and his credit. The Nevada Supreme Court adopted *Gruenberg* four square stating (p. 619): "We approve and adopt the rule that allows recovery of consequential damages where there has been a showing of bad faith by the insurer. Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort. Silberg v. California Insurance Company [11 Cal.3d 452] . . . (1974); Gruenberg v. Aetna Insurance Company [9 Cal.3d 566] . . . (1973); see also concurring opinion Fisher v. Executive Fund Life Ins. Co., 88 Nev. 704 . . . (1972). The evidence bearing on the issue of consequential damages was properly admitted."

This court likewise adopts the *Gruenberg* rule. The public policy considerations for such a rule are well summarized in the plaintiff's brief. Also, see the excellent discussion by William H. Gilardy, Jr., in "Good Faith and Fair Dealing In Insurance Contracts; Gruenberg v. Aetna Insurance Co.," 25 Hastings L.J. 699, 707. Suffice it to say that the unequal bargaining power of the parties, the special nature of the insurance business, and the disastrous economic effects that a bad-faith refusal to pay may cause the insured are paramount considerations. And the question of the allowability of punitive damages or damages of any nature beyond the policy

limits in the traditional contract action means that fundamental fairness in today's economy requires a separate tort action.

It is noted in passing that the pertinent paragraphs demurred to contain within the *Gruenberg* net independent, recognized tort causes of action for slander, malicious prosecution and tortious interference with contractual advantage. It is also noted, but not within the purview of this memorandum, that the plaintiff's complaint frequently uses the term "oppressive" in association with business conduct or bad faith. That language may well confuse the legal issue and would appear to add nothing to the clear mandate of the good-faith-and-fair-dealing rule.

For the reasons stated the demurrer is overruled.