No. 80-51946-S

Rose Spencer, *Plaintiff*, v. Aetna Life & Casualty Insurance Company, *Defendant*.

(611 P.2d 149)

Opinion filed May 10, 1980.

*Steve Rupp,* of Fred W. Phelps — Chartered, of Topeka, argued the cause and *Fred W. Phelps, Jr.,* of the same firm, was on the brief for the plaintiff.

*Paul H. Hulsey,* of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause and was on the brief for the defendant.

The opinion of the court was delivered by

HERD, J.: This case is filed in the United States District Court for the District of Kansas and comes to this court by certification from the United States District Court under authority of the Uniform Certification of Questions of Law Act. K.S.A. 1979 Supp. 60-3201 *et seq.* The certifying court shows by its order it has jurisdiction of the parties and the subject matter of this suit and that the law of Kansas controls the substantive legal issues of the case. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 82 L.Ed. 1188, 58 S.Ct. 817 (1938).

Plaintiff insured's complaint alleges two causes of action: 1) breach of contract; and 2) the tort of "bad faith" against the defendant insurance company arising out of a fire loss to a house covered by an insurance policy issued by defendant. The case is before the trial court upon defendant's motion to dismiss or, in the alternative, for summary judgment. The motion does not go to the breach of contract issue but tests only the question of whether

Kansas law recognizes the tort of "bad faith." The certifying court states it appears there is no controlling precedent in the decisions of the appellate courts of this state on this question of law.

We accepted certification pursuant to K.S.A. 1979 Supp. 60-3201 *et seq.* Those statutes provide:

"60-3201. **Power to answer.** The Kansas supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

"60-3202. **Method of invoking.** This act may be invoked by an order of any of the courts referred to in K.S.A. 1979 Supp. 60-3201 upon the court's own motion or upon the motion of any party to the cause.

"60-3203. **Contents of certification order.** A certification order shall set forth the questions of law to be answered and a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

"60-3204. **Preparation of certification order.** The certification order shall be prepared by the certifying court, signed by the judge or justice presiding at the hearing, and forwarded to the Kansas supreme court by the clerk of the certifying court under its official seal. The Kansas supreme court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of such court, the record or portion thereof may be necessary in answering the questions. The proceedings in the Kansas supreme court shall have precedence over all other hearings therein, except those of like character."

It is well established that appellate courts review only actual cases or controversies. To do otherwise would involve giving advisory opinions, which is constitutionally forbidden. *NEA-Topeka, Inc. v. U.S.D. No. 501,* 227 Kan. 529, 607 P.2d 40 (1980). The U.S. Supreme Court has recognized an exception to that rule "if the underlying dispute between the parties is one 'capable of repetition, yet evading review.'" *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546, 49 L.Ed.2d 683, 96 S.Ct. 2791 (1976); *Gannett Co. v. DePasquale,* 443 U.S. 368, 61 L.Ed.2d 608, 99 S.Ct. 2898 (1979); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 55 L.Ed. 310, 31 S.Ct. 279 (1911). This question arises from an actual case and controversy and although presented as a question of law, it neither violates the case or controversy requirement nor the separation of powers doctrine on advisory opinions.

Let us now turn to the question. Does Kansas recognize the tort of "bad faith"? The facts of the case are unnecessary for determination of this issue. The recognition of bad faith as an independent tort is a recent development in the law in response to the quest for "every wrong a remedy." See generally Note, *Insurer's Bad Faith: A New Tort for Kansas?*, 19 Washburn L. J. 467 (1980). In jurisdictions where bad faith has been adopted, it applies only as a remedy for an insured who feels mistreated at the hands of his insurance carrier. It has been noted that:

"Traditionally insurance policies were regarded as contracts for the payment of money upon the occurrence of specific contemplated risks. In an action for breach of an insurance contract, the plaintiff's recovery was limited to the benefits due under the contract plus interest. He could not recover damages for economic loss, emotional distress, or punitive damages regardless of injury to his health, feelings, reputation, or property; such damages were considered too remote." Murphy, *The Emerging Fiduciary Obligations and Strict Liability in Insurance Law,* 14 Cal. W. L. Rev. 358 (1978).

The traditional rule limited an insured to contract remedies which are the face amount of the policy plus interest. The growing public awareness, however, of abusive delays by insurance companies in paying legitimate claims has given rise to the demand for a vehicle to recompense the injured for his damages. See Savage, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L. Rev. 164, 166 (1972).

California courts laid the foundation for the extension of the bad faith tort from third party to first party situations. See *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 328 P.2d 198 (1958); *Crisci v. Security Ins. Co.,* 66 Cal. 2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967); *Fletcher v. Western National Life Ins. Co.,* 10 Cal. App. 3d 376, 89 Cal. Rptr. 78 (1970); *Richardson v. Employers Liab. Assur. Corp.,* 25 Cal. App. 3d 232, 102 Cal. Rptr. 547 (1972).

This line of cases culminated in the decision in *Gruenberg v. Aetna Ins. Co.,* 9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973), which firmly established the concept of the bad faith tort in first party insurance situations. The court in *Gruenberg* at page 574 stated:

"It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by

refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."

The following decisions stand out among those which have either expressly adopted *Gruenberg* or have embraced similar positions: *Craft v. Economy Fire & Cas. Co.,* 572 F.2d 565 (7th Cir. 1978) (Indiana law); *Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1 (7th Cir. 1972) (Illinois law); *Phillips v. Aetna Life Ins. Co.,* 473 F. Supp. 984 (D. Vt. 1979) (Vermont law); *Robertsen v. State Farm Mut. Auto Ins. Co.,* 464 F. Supp. 876 (D.S.C. 1979) (South Carolina law); *Escambia Treating Co. v. Aetna Cas. & Sur. Co.,* 421 F. Supp. 1367 (N.D. Fla. 1976) (Florida law); *Corwin Chrysler-Plymouth v. Westchester Fire,* 279 N.W.2d 638 (N.D. 1979); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978); *Christian v. American Home Assur. Co.,* 577 P.2d 899 (Okla. 1978); *MFA Mut. Ins. Co. v. Flint,* 574 S.W.2d 718 (Tenn. 1978); *Grand Sheet Metal, Etc. v. Protection Mut. Ins.,* 34 Conn. Supp. 46, 375 A.2d 428 (1977); *Diamon v. Penn. Mut. Fire Ins. Co.,* 247 Pa. Super. Ct. 534, 372 A.2d 1218 (1977); *Vernon Fire & Cas. Ins. Co. et al. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976); *United States Fidelity v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (1975); *Ledingham v. Blue Cross,* 29 Ill. App. 3d 339, 330 N.E.2d 540 (1975), *rev'd on other grounds* 64 Ill. 2d 338, 356 N.E.2d 75 (1976); *United Services Automobile Assoc. v. Werley,* 526 P.2d 28 (Alaska 1974); *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252 (Iowa 1972); *Kirk v. Safeco Ins. Co.,* 28 Ohio Misc. 44, 273 N.E.2d 919 (1970); and see *Gibson v. Nat. Ben Franklin Ins. Co.,* 387 A.2d 220 (Me. 1978).

The cases adopting the bad faith tort generally cite the following reasons for its adoption: First, in the absence of such a tort an insurance company can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims — An Emerging Trend,* 45 Fordham L. Rev. 164, 166 (1972). Secondly, since there is uneven bargaining power between an insured and its insurer, the insured needs the extra leverage the tort of bad faith would provide to even his position. *Craft v. Economy Fire & Cas. Co.,* 572 F.2d 565, 569; *Grand Sheet Metal Products Co. v. Protection Mut. Ins. Co.,* 34 Conn. Supp. 46, 375 A.2d at 430. It has also been

argued insurance contracts are contracts of adhesion. *D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.,* _____ Pa. Super. Ct. _____, 396 A.2d 780, 785 (1978). Third, a bad faith cause of action is justified because of the nature of the insurance industry, which is imbued with the public interest. *Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1, 5; *Grand Sheet Metal Products Co. v. Protection Mutual Insurance Co.,* 34 Conn. Supp. 46, 375 A.2d at 430. Fourth, an insured is usually suffering from physical injury or economic loss when bargaining with the insurance company, and the vulnerable position justifies the additional remedy of a bad faith cause of action. *Grand Sheet Metal Products Co. v. Protection Mut. Ins. Co.,* 34 Conn. Supp. 46, 375 A.2d at 430. A fifth rationale is the recognition of the bad faith tort in third party situations justifies its recognition in first party situations. *Escambia Treating Co. v. Aetna Cas. & Sur. Co.,* 421 F. Supp. at 1370; *Anderson v. Continental Ins. Co.,* 85 Wis. 2d at 688. Finally, when an insured purchases insurance, he is purchasing more than financial security; he is purchasing peace of mind. Therefore, the extra remedy of bad faith is needed to insure he receives the benefit of his bargain. *Eckenrode v. Life of America Ins. Co.,* 470 F.2d at 5; *D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.,* _____ Pa. Super. Ct. _____, 396 A.2d at 786.

Essentially, all arguments for the adoption of bad faith tort pertain to the unequal bargaining position of insured and insurer and the public interest nature of the industry.

On the other hand there are numerous jurisdictions which have refused to recognize the tort of bad faith as an independent cause of action in first party cases. The following constitute the majority of the significant cases which have rejected *Gruenberg: Wilson v. Colonial Penn. Life Ins. Co.,* 454 F. Supp. 1208 (D. Minn. 1978) (applying Minnesota law); *A.A.A. Pool Service & Supply, Inc., v. Aetna Cas. & Sur. Co.,* _____ R.I. _____, 395 A.2d 724 (1978); *Farris v. U.S. Fid. and Guar. Co.,* 284 Or. 453, 587 P.2d 1015 (1978); *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. 607, 392 A.2d 576 (1978); *Debolt v. Mutual of Omaha,* 56 Ill. App. 3d 111, 371 N.E.2d 373 (1978); *Craig v. Iowa Kemper Mut. Ins. Co.,* 565 S.W.2d 716 (Mo. App. 1978) (only suggesting that Missouri law does not support bad faith tort); *MacDonald v. Penn Mutual Life Insurance Company,* 276 So. 2d 232 (Fla. App. 1973).

These cases have rejected recognition of the tort for the fol-

lowing reasons: First, the rationale behind a bad faith claim in a third party situation is not applicable to first party situations. *Farris v. U.S. Fid. and Guar. Co.,* 284 Or. at 460; *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. at 614. Second, some courts conclude that the "peace of mind" argument does not justify a bad faith cause of action in insurance cases because every contract is entered into for peace of mind. *Farris* at 465. Third, some cases reject the argument that the insurance industry is imbued with public interest justifying the recognition of the tort of bad faith. *Farris* at 467.

The "adhesion contract" argument was rejected in at least one case on the grounds the insurance policy in question had been approved and therefore, could not be considered an "adhesion contract." See *A.A.A. Pool Service & Supply, Inc. v. Aetna Cas. & Sur. Co.,* _____ R.I. _____, 395 A.2d at 726.

The most widely used argument against recognition of the tort of bad faith is that many states have enacted statutory penalties against companies which fail without good cause to settle claims with their insureds. It is argued these legislative remedies are exclusive, thus eliminating the need for other remedies. *A.A.A. Pool Service & Supply, Inc. v. Aetna Cas. & Sur. Co.,* _____ R.I. _____, 395 A.2d at 726; *Farris v. U.S. Fid. and Guar. Co.,* 284 Or. at 458; *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. at 614-15. In *Debolt v. Mutual of Omaha,* 56 Ill. App. 3d at 116, the court stated:

"We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs. Where the legislature has provided a remedy on a subject matter we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree."

It has been held that traditional compensatory damages for breach of contract are adequate and that the additional remedy of bad faith tort is unnecessary. *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. at 613. Finally, it has been noted that the tort of outrage, which has been adopted in Kansas, and the tort of bad faith provide remedies for the same wrongs and they are in fact mixed concepts used somewhat interchangeably. See, *e.g., Lavoie v. Aetna Life & Cas. Co., Inc.,* 374 So. 2d 310, 312 (Ala. 1979)

(concurring opinion of Jones, J.); Restatement (Second) of Torts § 46 (1965).

Let us now turn to Kansas law. We have traditionally held that only contractual damages are available for breach of an insurance contract and that such damages do not include mental anguish or punitive damages. *Moffet v. Kansas City Fire & Marine Ins. Co.,* 173 Kan. 52, 244 P.2d 228 (1952). In *Moffet* this court considered an action brought by a policy holder against his insurance company to recover for the loss of a combine, for punitive damages and attorney's fees. Plaintiff alleged his combine had been wrecked and, pursuant to the terms of his policy with the insurance company, he attempted to collect from them but they "wilfully and wantonly refused to pay him for the damages suffered." *Moffet* at 54. In that case, this court stated:

"As a general rule, damages for breach of contract are limited to pecuniary loss sustained. According to the overwhelming weight of authority exemplary or punitive damages are not recoverable in actions for breach of contract in the absence of independent tort or wrong causing additional injury and in a few other situations not present here." *Moffet* at 57.

In *Hess v. Jarboe,* 201 Kan. 705, Syl. ¶ 2, 443 P.2d 294 (1968), this court stated:

"A party may recover punitive damages . . . when some independent tort results in additional injury and such tortious act indicates malice, fraud or wanton disregard for the rights of others."

See also *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980); *Temmen v. Kent-Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95 (1980); *Modern Air Conditioning, Inc. v. Cinderella Homes,* 226 Kan. 70, 596 P.2d 816 (1979); *Dold v. Sherow,* 220 Kan. 350, 552 P.2d 945 (1976); *Hass v. Preferred Risk Mutual Insurance Company,* 214 Kan. 747, 522 P.2d 438 (1974).

The courts have found that a liability insurer has a fiduciary relationship with its insured. In settling and defending actions against the insured, an insurer must act in the best interests of its insured. With respect to the third-party situation concerning an insurer's duty to defend its insured and the duty of good faith dealing between the insured and the insurer, we stated in *Bollinger v. Nuss,* 202 Kan. 326, Syl. ¶ 1, 449 P.2d 502 (1969):

"In defending and settling claims against its insured, the insurer of a liability or indemnity policy owes to the insured the duty to act in good faith and without negligence; failure to do so will result in the insurer being held liable for the full amount of the insured's resulting loss, even if that amount exceeds policy limits."

At Syl. ¶ 9, the court stated:

"Whether an insurer in defending a claim and refusing an offer of settlement within policy limits was negligent or acted in bad faith is a question for the trier of fact in each case, and the findings of the lower court, when supported by substantial, competent evidence, will not be disturbed on appeal."

The language in *Bollinger* at 332-34, discussing the rationale for the duty to act in good faith in a third party case, distinguishes this case from a duty in a first party situation:

"A later case, *Bennett v. Conrady*, 180 Kan. 485, 305 P.2d 823, involved an insurer's liability in the settlement of less than all of several claims against its insured. There, for the first time, the court spoke of bad faith, as well as negligence, and stated the rule to be applied was that the insurer of a liability or an indemnity policy would be liable for the full amount of its insured's resulting loss, even if that amount exceeds the limit of the policy, for *negligence* or *bad faith* in defending or settling an action against the insured. The court noted that once the insurer steps into the negotiations between its insured and an injured claimant, due care must be exercised by the insurer to protect the rights of the insured. The degree of care to be exercised by the insurer in the settlement of claims was said to be that which a person of ordinary care and prudence would exercise in the management of his own affairs. The opinion emphasizes the wide variation in the decisions applying the negligence test or good faith test in respect to the duty of the insurer to consider the interests of the insured in approving or rejecting a settlement within policy limits. The court also stated:

'Because of the possible conflict of interest between an insurance company and its insured in the defense or settlement of claims against the insured there is a mutual fiduciary relationship whereby each owes the other the duty to exercise reasonable care in conducting such defense or settlement.' (Syl. ¶ 5.)

Under the facts and circumstances of that case the court concluded the insurance company exercised *due care* to protect the rights of its insured and acted in *good faith* in making the settlements.

"The *Anderson* and *Bennett* cases have apparently led to some confusion among the annotators and text-writers as to whether Kansas recognizes both the negligence test and the good faith test. [Citations omitted.] We read these cases to mean that liability may be imposed against the insurer on either theory. In other words, the insurer, in defending and settling claims against its insured, owes to the insured the duty not only to act in good faith but also to act without negligence.

"In the vast majority of cases passing upon the question, the courts have held that a liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits. [Citation omitted.] While some courts have expressly rejected the negligence test and permitted recovery only if the insurer has failed to exercise good faith [citations omitted], we are not inclined to do so. Public policy dictates that the insured's interests be adequately protected, and we believe this may be best accomplished by holding

that both due care and good faith are required of the insurer in reaching the decision not to settle. [Citations omitted.]

"The imposition of liability against an insurer for failing to exercise due care in settling a suit is perhaps a stringent standard by which to measure the insurer's duty. In fact, it has been said less culpability is involved in the application of the negligence test than the good faith test. [Citation omitted.] It must be remembered, however, that the insured has surrendered a valuable right: that of conducting an investigation and considering possible offers of settlement. Since the absolute control of the defense is turned over to the insurer so that it may reject settlements within policy limits, and as a result, expose the insured to payment of all sums in excess of policy limits, surely it is not asking too much to require the insurer to act without negligence."

It is clear this court has adopted the rationale that in third party claims an insurer, in defending and settling claims against its insured, owes a duty to the insured not only to act in good faith but also to act without negligence. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 567 P.2d 1359 (1977); *Rector v. Husted,* 214 Kan. 230, 519 P.2d 634 (1974); *Castoreno v. Western Indemnity Co. Inc.,* 213 Kan. 103, 515 P.2d 789 (1973); *Bollinger v. Nuss,* 202 Kan. 326. Although those duties are well established in a third party situation, Kansas cases have not gone so far as to find that the lack of good faith by an insurer in dealings on behalf of his insured rises to the level of an independent tort. Thus, the remedies available to a wronged insured in that instance remain limited to the insured's loss, even though that loss exceeds policy limits. There are, however, no Kansas cases adopting that rationale in first party situations.

The first party relationship is distinguishable from the third party situation. In third party claims, the absolute control of the trial and settlement is in the hands of the insurer. That control gives rise to a fiduciary relationship between the insurer and its insured. In first party claims the insurer is not in a position to expose the insured to a judgment in excess of policy limits through its unreasonable refusal to settle a case nor is the insurer in exclusive control of the defense. Although an insurer must make a good faith attempt to settle claims (K.S.A. 40-2404[9][f]), the insured and insurer in a first party relationship have an adversary relationship, rather than a fiduciary relationship.

Turning to the question of the existence of a bad faith tort in first party situations, we note this court is faced squarely with the question of whether there are wrongs being committed by insurance companies against their insureds for which there is no

adequate remedy under present law. If so, should the courts provide a remedy? To answer the first question, let us examine the remedies provided by statute. First, we must recognize that the Kansas legislature has long recognized the insurance industry is imbued with the public interest as evidenced by the creation in 1927 of the Kansas Department of Insurance. The department is charged with the duty of regulating insurance companies, all of which must be licensed to do business in Kansas. Illustrations of that regulation are found in the following statutes: K.S.A. 40-219 provides an insurance company may be enjoined from doing any business in this state if it fails to pay a loss within three months after final judgment. The injunction against doing business shall continue until the judgment is fully paid. K.S.A. 40-254 provides any person may be fined $500 and/or imprisoned six months for violation of the act.

The following statutes provide for the recovery of attorneys' fees: K.S.A. 40-256 provides the insurance company must pay attorneys' fees for an insured who obtains a judgment against it where the company refused to pay the full amount of loss without just cause or excuse. K.S.A. 40-908 provides attorneys' fees may be recovered by a plaintiff where judgment is rendered against a company on a policy insuring property against certain losses. See generally the following cases which have applied these statutes regarding attorneys' fees: *Van Hoozer v. Farmers Ins. Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976); *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 528 P.2d 134 (1974); *Sloan v. Employers Casualty Ins. Co.,* 214 Kan. 443, 521 P.2d 249 (1974); *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P.2d 667 (1974); *Forrester v. State Farm Mutual,* 213 Kan. 442, 517 P.2d 173 (1973); *Lattner v. Federal Union Insurance Co.,* 160 Kan. 472, 163 P.2d 389 (1945); *Hand v. State Farm Mutual Automobile Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978). Finally, K.S.A. 1979 Supp. 40-3111 provides attorneys' fees for advising and representing a claimant in an action to recover overdue personal injury protection benefits may be charged against an insurer or self-insurer "if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

K.S.A. 40-2401 through 40-2414 encompass relevant statutes in an act designed "to regulate trade practices in the business of

insurance . . . by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." K.S.A. 40-2401.

K.S.A. 40-2404 defines the "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance," prohibited by K.S.A. 40-2403. Our attention is particularly drawn to K.S.A. 40-2404(9) regarding unfair claim settlement practices, which states:

"*Unfair settlement practices.* Committing or performing with such frequency as to indicate a general business practice of any of the following:

"(*a*) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

"(*b*) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

"(*c*) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

"(*d*) refusing to pay claims without conducting a reasonable investigation based upon all available information;

"(*e*) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

"(*f*) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

"(*g*) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

"(*h*) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

"(*i*) attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

"(*j*) making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

"(*k*) making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

"(*l*) delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

"(*m*) failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

"(*n*) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

We noted in our foregoing discussion, K.S.A. 40-2404(9)(*f*) recognizes the importance of an insurer's good faith in effectuating "prompt, fair and equitable settlements of claims in which liability has become reasonably clear." This statute deals directly with the situation now before us. When the commissioner of insurance has reason to believe any person engaged in the business of insurance in this state has participated or is participating in unfair methods of competition or unfair or deceptive acts or practices "whether or not defined in section 3 [40-2404] of this act," a statement of charges and notice of hearing is served upon such person. K.S.A. 40-2406(*a*). The person so served shall have an opportunity to be heard and "to show cause why an order should not be made by the commissioner requiring such person to cease and desist from the acts, methods or practices so complained of." K.S.A. 40-2406(*b*). K.S.A. 1979 Supp. 40-2407 provides the penalties for violation of the foregoing as follows:

"**40-2407. Unfair methods of competition or unfair and deceptive acts or practices; cease and desist orders; penalties; suspension or revocation of license; modification of commissioner's orders.** (*a*) If, after such hearing, the commissioner shall determine that the person charged has engaged in an unfair method of competition or an unfair or deceptive act or practice, such commissioner shall reduce his or her findings to writing and shall issue and cause to be served upon the person charged with the violation a copy of such findings and an order requiring such person to cease and desist from engaging in such method of competition, act or practice and if the act or practice is a violation of K.S.A. 40-2404, the commissioner may in the exercise of discretion order any one or more of the following:

"(1) Payment of a monetary penalty of not more than one hundred dollars ($100) for each and every act or violation; but not to exceed an aggregate penalty of two thousand five hundred dollars ($2,500), unless the person knew or reasonably should have known he or she was in violation of this act, in which case the penalty shall be not more than one thousand dollars ($1,000) for each and every act or violation, but not to exceed an aggregate of ten thousand dollars ($10,000) in any six-month period;

"(2) suspension or revocation of the person's license if such person knew or reasonably should have known he or she was in violation of this act; or

"(3) redress of an injury by requiring the refund of any premiums paid by and/or the payment of any moneys withheld from, any consumer and/or appropriate public notification of the violation.

"(*b*) Until the expiration of the time allowed under subsection (a) of K.S.A. 40-2408 for filing a petition for review if no such petition has been duly filed within such time or, if a petition for review has been filed within such time, then until the transcript of the record in the proceeding has been filed in the district

court, as hereinafter provided, the commissioner may at any time, upon such notice and in such manner as the commissioner shall deem proper, modify or set aside in whole or in part any order issued under this section.

"(c) After the expiration of the time allowed for filing such a petition for review if no such petition has been duly filed within such time, the commissioner may at any time, after notice and opportunity for hearing, reopen and alter, modify or set aside, in whole or in part, any order issued under this section, whenever in the commissioner's opinion conditions of fact or of law have so changed as to require such action or if the public interest shall so require."

In addition, K.S.A. 1979 Supp. 40-2411 provides penalties for violation of cease and desist orders.

The legislature has recognized the public interest nature of the insurance industry and has also recognized policy holders require protection because of their inequitable bargaining position. The penalties, including fines and imprisonment, and imposition of attorneys' fees are adequate to protect the public from the actions of a recalcitrant insurer in first party cases. We do not say the legislative remedy is exclusive but in the absence of a more definitive showing of inadequacy of the remedy than we have before us at this time, we hold the remedies are adequate to force compliance with the terms of insurance contracts.

We are of the opinion the legislature has intended to provide a remedy for an insured who has problems with his insurance company. He can maintain an action on the contract for his policy benefits, with costs, interest and attorneys' fees under arbitrary circumstances. He may also report the company to the Department of Insurance under the Uniform Trade Practices Act for improper handling of claims pursuant to K.S.A. 40-2404(9). The company's actions are reviewable by the Department and punishable if found improper. The legislature has provided several remedies for an aggrieved insured and has dealt with the question of good faith first party claims. Statutory law does not indicate the legislature intended damages for emotional suffering to be recoverable by an aggrieved insured through a tort of bad faith. Where the legislature has provided such detailed and effective remedies, we find it undesirable for us to expand those remedies by judicial decree.

We hold the tort of bad faith is not recognized in Kansas.

IT IS BY THE COURT SO ORDERED.