**Leonard JEFFERSON et al.**

v.

**John F. MORAN.**

**No. 83-406-Appeal.**

Supreme Court of Rhode Island.

July 25, 1984.

---

Normand G. Benoit, American Civil Liberties Union, Providence, for petitioners.

Anthony A. Cipriano, Legal Counsel for the Dept. of Corrections, Providence, for respondent.

## OPINION

MURRAY, Justice.

This case has been certified to us by the Federal District Court of Rhode Island pursuant to Rule 6 of the Supreme Court Rules. In pertinent part, it is a civil action in which the petitioners seek both declaratory and injunctive relief for alleged violations of the Fourteenth Amendment, and 42 U.S.C.A. § 1983 (West 1981) by virtue of respondent's alleged non-compliance with G.L.1956 (1977 Reenactment) § 42–35–3.

The petitioners are inmates at the Adult Correctional Institutions (ACI) and others affected by certain policies adopted by the Department of Corrections (DOC) for the State of Rhode Island. The respondent is John J. Moran, the present director of the DOC.

The policies in issue are contained in certain "Operational Memoranda" distributed by respondent to various personnel in his department. (See appendix).

The respondent admits that these memoranda were filed with the Secretary of State in accordance with the Rhode Island Administrative Procedures Act, chapter 35 of title 42. The operational bulletins instituted by Moran contained criteria governing a variety of prison activities, including inmate classification and parole, discharge and transfer of inmates, religious services and programs, incoming and outgoing mail policies, furlough programs, strip searches of visitors, and key control plans.

Section 42–35–3 requires that before a state agency adopts "any rule" under § 42–35–1(g), it must (1) provide the general public and certain interested parties with notice of its proposed action, (2) solicit written comment upon the propriety of the proposed "rule," and (3) provide for an oral hearing to discuss the merits of the proposed "rule" if requested to do so by twenty-five individuals, an agency of govern-

ment, or an association of not less than twenty-five people.

The term "rule" is defined in § 42–35–1(g) as "each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include (1) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public * * *."

The issue in this case is whether the operational memoranda promulgated by respondent and filed with the Secretary of State are "rules" under § 42–35–1(g). The petitioners assert that the memoranda do constitute rules, and since respondent did not comply with the provisions of § 42–35–3, these rules were invalidly promulgated and are thus invalid. Moran admits that he did not comply with the notice, comment, and hearing provisions of § 42–35–3. He claims, however, that he was not required to do so since the memoranda relate solely to the internal management of the DOC and do not affect any private rights or procedures available to the public.

Because this court has never interpreted the meaning of the term "rule" contained in § 42–35–1(g), the Federal District Court has asked our guidance in resolving this dispute. *See Jefferson v. Moran*, 563 F.Supp. 227, 229–30 (D.R.I.1983).

The specific question certified to this court is:

"Are the 'Operational Memoranda,' copies of which are attached, which were issued by Defendant between May 18, 1981 and April 27, 1982 to Department of Corrections personnel and later filed with the Secretary of State 'rules' within the meaning of the Rhode Island Administrative Procedures Act R.I.Gen.Laws § 42–35–1, subject to the notice and hearing requirements of R.I.Gen.Laws § 42–35–3?" [1] *Id.* at 230.

We have thoughtfully reviewed and considered the contents of each memoranda in the context of the statutory definition of "rule" contained in § 42–35–1(g). In our view, certain of these memoranda may arguably be "rules" subject to the procedural requirements of § 42–35–3.[2] We decline to so hold, however, and refuse to answer this certified question for the following reason: the Supreme Court of the United States has issued an opinion subsequent to the dates the petitioners filed their complaint and the Federal District Court issued its certification order which demonstrates that petitioners have raised their challenge to these memoranda in the wrong forum.[3]

■ This case involves a suit by petitioners' against a state official in his official

---

**1.** We must point out that there is a discrepancy concerning the dates of issuance of these operational memoranda. In the question certified to us by the Federal District Court, it is stated that the memoranda were issued between May 18, 1981, and April 27, 1982. The index of the memoranda and individual copies that were forwarded along with the District Court's certification order demonstrate, however, that the memoranda were issued between January 1, 1980, and January 29, 1982. Although there is some disagreement among the parties about the actual dates of issuance of the memoranda neither party contended, either in its briefs or at oral argument, that the index of memoranda that we have set out in the appendix does not contain the operational memoranda that are the subject of this case. For our purposes, therefore, we shall rely upon the dates contained in the appendix.

**2.** At this time, we decline to specify which memoranda we consider subject to G.L.1956 (1977 Reenactment) § 42–35–3. We shall, however, state the basis for our belief. Although all of the memoranda set out in the appendix do relate to the internal management of the Department of Corrections, as respondent contends, certain ones among them appear to affect "private rights or procedures available to the public." These memoranda would not therefore be exempt from the statutory definition of the term "rule" under § 42–35–1(g).

**3.** As our later discussion will indicate, even if we were to partially answer this certified question in the affirmative, the Federal District Court of Rhode Island would be without authority to order the relief that petitioners seek.

capacity[4] as director of a state agency. Although petitioners mention in their briefs that they have not forfeited their right to challenge the constitutionality of respondent's conduct in the District Court, it is beyond dispute that the only question before us is whether respondent has violated certain provisions of a Rhode Island statute. The case before us constitutes, therefore, a suit by petitioners against a state official, alleging violations only of state, and not federal, law. Such a suit, the Supreme Court has recently held, is outside the jurisdiction of the federal courts. *Pennhurst State School & Hospital v. Halderman,* — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

"[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Employees v. Missouri Public Health & Welfare Dept.,* 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251, 254 (1973). Similarly, "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School & Hospital v. Halderman,* — U.S. at —, 104 S.Ct. at 908, 79 L.Ed.2d at 79 (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389, 394 (1945)).

In *Pennhurst* the Supreme Court directly addressed a case involving the identical jurisdictional question that we now have before us. It involved a suit brought in federal court against certain state officials in Pennsylvania charging them with violations of a particular Pennsylvania statute. In holding that the Federal District Court lacked jurisdiction to enjoin the state institutions and officials from engaging in certain conduct on the basis of their noncompliance with state law, the Court explicitly stated that the Eleventh Amendment prohibited such injunctive relief. Specifically, the Court stated that

"[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at —, 104 S.Ct. at 911, 79 L.Ed.2d at 82.

The Court in *Pennhurst* extended its holding to include even state-law claims heard by a federal court under the doctrine of pendent jurisdiction.

"[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. * * * We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* at —, 104 S.Ct. at 919, 79 L.Ed.2d at 92.

■ The mandate of *Pennhurst* therefore controls the Federal District Court's disposition of petitioners' request for injunctive relief. And although petitioners also seek declaratory relief in this action, any declaration that they may receive in their favor, unaccompanied by the District Court's award of injunctive relief, would not provide them with the actual remedy they seek.

---

4. Although this court has not been forwarded a copy of petitioners' original complaint, we do recognize that the caption of petitioners' reply brief also names Moran as a defendant in his individual capacity. There is nothing in the record to indicate, however, that Moran is being sued for anything but his official acts. For this reason, we consider this a suit only against him in his official capacity.

Consequently, even if we narrowly construed the Supreme Court's decision in *Pennhurst* as only preventing the Federal District Court from awarding injunctive (and not declaratory) relief to petitioners,[5] the result in this case would not change. The declaratory relief that petitioners seek in this action is an essential prerequisite that is inextricably linked to their request for injunctive relief.

Although we are most appreciative of the Federal District Court's application of principles of comity in certifying this question to us and are fully cognizant of its genuine expression of deference, we are forced to conclude, in light of *Pennhurst*, that it would be unwise for us to respond to the District Court's request. Even if we were to provide petitioners with the response they seek to this certified question, they would nevertheless be required to press their claim for injunctive relief in the Superior Court. Under this scenario, it is our conviction that the best manner of resolving this dispute would be to afford our trial court an opportunity to adjudge the merits of petitioners' suit before we address this question. The Superior Court should be given an opportunity to fully receive evidence and hear legal arguments concerning petitioners' allegations that respondent has failed to comply with § 42–35–3 in adopting the disputed memoranda. We would then have before us a complete record of petitioners' challenge to these memoranda, unlike now, when the papers that we have received from the Federal District Court only reflect the preliminary stage of this case. We believe that a complete record developed by the parties in the Superior Court would provide us with the necessary assistance we desire in properly resolving this case.

Our refusal to answer the Federal District Court's inquiry is in total consonance with the express language of our Rule 6. Rule 6 provides:

"6. Certification of questions of law. Section 1. This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

The relevant terms of the rule are unambiguous on their face. The rule directs that we *may* answer certified questions from the federal courts. It does not, however, require that we always honor such requests. Rule 6 does not impose upon us an absolute duty to answer questions certified from the Federal District Court. *See Abrams v. West Virginia Racing Commission*, —— W.Va. ——, ——, 263 S.E.2d 103, 105 (1980). The thrust of its language is to afford us discretion in deciding whether we should respond to certified questions from the federal courts. *See Spencer v. Aetna Life & Casualty Insurance Co.*, 227 Kan. 914, 914–15, 611 P.2d 149, 149–51 (1980). In a case such as this, in which our response to the Federal District Court's inquiry would not resolve the controversy between the parties—since further state-court involvement would be necessary—we must decline its request. *See* Sup.Ct.R. 6; *see also, Greene v. Massey*, 384 So.2d 24, 27–28 (Fla.1980).

For the stated reasons, we decline to answer the question certified to us by the Federal District Court.

---

**5.** We would note here that the validity of such a construction is quite doubtful given the expansive interpretation that the Supreme Court gave to the language of the Eleventh Amendment in *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

APPENDIX

Operational Memoranda of Department of Corrections Challenged by
Petitioners as Invalidly Promulgated

| Date | Description | Number | Secretary of State Code No. |
|------|-------------|--------|------------------------------|
| 1–1–80 | Administrative Policy: Issuance of Policy & Procedures | 1.00.01 | COR–14–81 |
| 9–20–80 | Parole: Procedure for Setting Up Parole Process for All Eligible Inmates | 1.11.01 | COR–23–81 |
| 10–27–80 | Parole: Procedure for Setting Up Out-of-State Parole Process for All Eligible Inmates | 07.11.03 | COR–46–81 |
| 1–30–81 | Classification: Criteria for Classification & Re-Classification of Inmates | 1.19.01 | COR–30–81 |
| 4–8–81 | Investigations: Adult Probation & Parole Unit Pre-Parole Investigations | 7.04.02 | COR–57–81 |
| 4–8–81 | Investigations: Adult Probation & Parole Unit Character Investigations | 7.04.03 | COR–65–81 |
| 4–20–81 | Adult Services' Programs: Policy Regarding Religious Services & Programs | 5.06.01 | COR–53–81 |
| 4–20–81 | Adult Services' Programs: Supervision of Institutional Religious Services & Programs | 5.06.02 | COR–54–81 |
| 4–20–81 | Adult Services' Programs: Inmate Requests for Contact with Clergy Representatives | 5.06.03 | COR–55–81 |
| 6–22–81 | Field Services Programs: Violation Procedures for Adult Parole | 7.07.10 | COR–87–81 |
| 7–15–81 | Inmate Life: Visits | 5.17.02 | COR–86–81 |
| 8–10–81 | Intake & Orientation: Composition of Inmate's Identification & Classification Files | 5.15.12 | COR–88–81 |
| 9–1–81 | Inmate Life: Policy Concerning Mail to Inmates | 5.17.03 | COR–84–81 |
| 9–2–81 | Security & Control: Strip-Search of Visitors | 5.13.10 | COR–85–81 |
| 9–29–81 | Discharge & Transfers: Intra-Prison Transfers of ACI Inmates | 5.16.01 | COR–2–81 |
| 1–29–82 | Adult Services' Programs: Inmate Furlough Program Policies & Procedures | 5.06.04 | COR–4–82 |