**BERKSHIRE CABLEVISION OF RHODE ISLAND, INC.**

v.

**Edward F. BURKE et al.**

No. 84–248–M.P.

Supreme Court of Rhode Island.

Feb. 20, 1985.

Michael DiBiase, Jeffrey C. Schreck, William P. Robinson, III, Edwards & Angell, Providence, for plaintiff.

John A. Notte III, Providence, for R.I. Div. of PUC.

Mark S. Mandell, Michael S. Schwartz, Mandell, Goodman & Schwartz, Ltd., Providence, William C. Maaia, Rumford, Robert M. Silva, Middletown, for defendants.

Charles J. McCarthy, Ward, McCarthy & Robinson, Providence, pro hac vice for Howard L. Slater, Barry S. Feigenbaum, Byrne & Slater P.C., Hartford, Conn.

R. Daniel Prentiss, Decof & Grimm, Providence, amicus curiae for R.I. League of Cities and Towns.

Brenda L. Fox, Carol A. Melton, Robert St. John Roper, Michael S. Schooler, Timothy C. Sloan, Washington, D.C., amicus curiae for National Cable Television Assoc.

## OPINION

KELLEHER, Justice.

This case has been certified to this court by the United States Court of Appeals for the First Circuit pursuant to Rhode Island Supreme Court Rule 6. Berkshire Cablevision of Rhode Island, Inc. (Berkshire), has challenged two rules issued by Edward F. Burke, the administrator of the Rhode Island Division of Public Utilities and Carriers (Burke or DPUC) governing the operation of Community Antenna Television (CATV) Systems in Rhode Island. The Federal District Court of Rhode Island de-nied Berkshire the declaratory and injunctive relief it requested and entered judgment on behalf of Burke on October 4, 1983. Berkshire appealed this ruling to the Court of Appeals for the First Circuit. On May 2, 1984, that court certified to us an unsettled question of Rhode Island law, resolution of which is essential to the determination of the issues before it.

On January 29, 1982, Berkshire filed an application with the DPUC for a CATV compliance order certificate seeking to provide CATV service in an area that was designated by the DPUC as Service Area No. 7.[1] Applications were also submitted by other hopeful candidates. The DPUC scheduled hearings on the applications on August 3, 4, 16, and 17, 1982. Berkshire made its presentation on August 3 and 4. On August 17, 1982, Berkshire filed a complaint in the Federal District Court of Rhode Island challenging both the constitutionality of section 7.3 and chapter 14 of the DPUC's Rules Governing Community Antenna Television Systems (Rules), and Burke's authority under Rhode Island law to issue that section and chapter.

Specifically, sec. 7.3 requires that a CATV system operating in Rhode Island maintain an "institutional/industrial network" at its own expense and provide service to various public and private groups as identified by the administrator, including municipal buildings, hospitals, libraries, schools, and religious institutions. Rules sec. 7.3(b)(2). Chapter 14 of the Rules requires that a minimum of seven television channels be reserved by the CATV operator for use by members of the public. Section 14.1(a). Chapter 14 further specifies the considerable amount of equipment and professional assistance that the CATV operator must make available at its own expense to ensure that the required public access be meaningful. Sections 14.2, 14.3, 14.9.

---

**1.** CATV Service Area No. 7 encompasses the city of Newport and the neighboring towns of Mid-dletown, Portsmouth, Tiverton, and Little Compton.

Berkshire's objection to these Rules is threefold. First, it argues on constitutional grounds that the Rules violate Berkshire's First Amendment rights by burdening and restraining the editorial discretion of CATV operators and by promoting religion in violation of the establishment clause. It also argues that the Rules deprive it of property without just compensation in violation of the Fourteenth Amendment. These issues are not before this court. Berkshire's third argument disputes the DPUC's authority in promulgating the Rules, claiming Burke exceeded his statutory authority under G.L.1956 (1977 Reenactment) §§ 39–19–1—39–19–9 (1984 Non Cum.Supp.). The Federal District Court rejected Berkshire's arguments on all points. *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 571 F.Supp. 976 (D.R.I.1983). On appeal, the Court of Appeals for the First Circuit determined that the issue of Burke's statutory authority to promulgate the subject Rules is an unresolved matter of state law properly certifiable to this court. Thus, we have been asked to respond to the following question:

> "Do section 7.3 and chapter 14 of the Division of Public Utilities and Carriers' Rules Governing Community Antenna Television Systems, which respectively set out institutional/industrial network and access channel requirements, fall within the Division's jurisdiction to 'supervise and regulate every [cable television operator within Rhode Island] so far as may be necessary to prevent such operation from having detrimental consequences to the public interest' under R.I. Gen.Laws § 39–19–6?"

2. Supreme Court Rule 6 does not require that we respond to every question certified to us by a federal court. Rule 6 provides: "This court *may* answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or the District Court of Columbia, or a United States District Court when requested by the certifying court * * *." (Emphasis added.) The authorization contained in Rule 6 is clearly discretionary.

At the outset we must determine whether the question certified for our review is properly cognizable by this court, or whether our response here would be unwise in light of the decision of the United States Supreme Court in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[2] In *Pennhurst,* the Court held that the Eleventh Amendment bars a suit in federal court for injunctive relief against a state official in his official capacity to force his compliance with state law.[3] *Id.* at ——, ——, 104 S.Ct. at 911, 915, 79 L.Ed.2d at 78, 82. The Court found that the Federal District Court there had no jurisdiction to enjoin Pennsylvania state officials from continuing conduct that allegedly violated a Pennsylvania statute.

In *Jefferson v. Moran,* R.I., 479 A.2d 734 (1984), we were presented with an identical situation. The petitioners in that case sought injunctive relief against the director of the Rhode Island Department of Corrections in the Federal District Court of Rhode Island, alleging that certain of his policies had been promulgated in violation of state law. When the Federal District Court certified to us the question of whether the director's policies constituted "rules" under Rhode Island law, we declined to respond since, regardless of our answer, the Federal District Court lacked the jurisdiction to afford the petitioners relief under *Pennhurst.* We concluded that lower state-court action would be necessary and advisable prior to our review. *Jefferson,* 479 A.2d at 738. We have reached the opposite conclusion in the case before us, and we will respond to the question certified for our review.

*Jefferson v. Moran,* R.I., 479 A.2d 734, 738 (1984).

3. The Eleventh Amendment proscribes extension of the judicial power of the United States to suits "commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any Foreign State." Suits by citizens of the state sued are precluded by the doctrine of sovereign immunity unless abrogated by statute or judicial action.

Rule 6 provides that questions appropriate for our review upon certification are those involving "questions of law of this state which may be determinative of the cause then pending in the certifying court * * *." The issue presented to us by the First Circuit clearly meets this requirement. Our answer here, in contrast to *Jefferson*, will provide a resolution of the state-law issue before the First Circuit, necessitating neither federal injunctive relief on that ground nor further involvement by our state courts. The issues remaining before the First Circuit will then be grounded in the Federal Constitution, providing no further jurisdictional concerns for this court.

In addition, we are persuaded that the issues raised by Berkshire are of substantial public importance to the people of Rhode Island, and their resolution should not be further delayed absent extraordinary justification. Having determined that this question is a proper one for our review, we now pass to consideration of the question certified.

The issue presented to us by the First Circuit Court is a narrow one of statutory interpretation. Section 39–19–6 reads in pertinent part:

> "Jurisdiction of division.—The division shall supervise and regulate every CATV company operating within this state so far as may be necessary to prevent such operation from having detrimental consequences to the public interest, and for this purpose may promulgate and enforce such reasonable rules and regulations as it may deem necessary with reference to issuance of certificates, territory of operation, abandonment of facilities, elimination of unjust discrimination among subscribers, financial responsibility and insurance covering personal injury and property damage, safety of equipment and operation and filing of reports."

Essentially, we have been asked to determine whether the DPUC's statutory authorization to regulate CATV operators to pre-vent "detrimental consequences to the public interest" encompasses the two rules in issue here. As creations of the Legislature, administrative agencies must have specific statutory authority for the regulations they promulgate. *Little v. Conflict of Interest Commission*, 121 R.I. 232, 236, 397 A.2d 884, 886 (1979); *Finn v. Planning and Zoning Commission of Seymour*, 156 Conn. 540, 546, 244 A.2d 391, 393–94 (1968). Berkshire argues that the DPUC's regulatory powers under § 39–19–6 are limited to the seven categories specifically referred to therein. In enacting sec. 7.3 and chap. 14, Berkshire argues, the DPUC has improperly attempted to extend its rule-making authority to "modify the statutory provisions under which it acquired power." *Little*, 121 R.I. at 236, 397 A.2d at 886. We do not agree.

It is our responsibility in reviewing § 39–19–6 to determine and effectuate what the Legislature intended. *Bassett v. DeRentis*, R.I., 446 A.2d 763, 764 (1982); *In re R.J.P.*, R.I., 445 A.2d 286, 287 (1982). The statute must be considered in its entirety and given a meaning "most consistent with its policies or obvious purposes." *City of Warwick v. Almac's, Inc.*, R.I., 442 A.2d 1265, 1272 (1982). *See Montaquila v. St. Cyr*, R.I., 433 A.2d 206 (1981); *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976). In addition, while not controlling, the interpretation given a statute by the administering agency is entitled to great weight. *Statewide Multiple Listing Service, Inc. v. Norberg*, 120 R.I. 937, 940–41, 392 A.2d 371, 373 (1978); *Flather v. Norberg*, 119 R.I. 276, 283 n. 3, 377 A.2d 225, 229 n. 3 (1977). Our task of construction is further aided by the mandate of the Legislature that the section in issue here receive a liberal construction. Section 39–1–38 requires that the provisions of title 39 be "construed liberally in aid of its declared purpose," which § 39–1–1(2) declares to be "to protect and promote the convenience, health, comfort, safety, accommodation and welfare of the people * * *."

The Legislature clearly used broad language when it empowered the DPUC to protect the public from the possible "detrimental consequences" of CATV operation. Indeed, broad language was a necessity in 1969 when this statute was enacted because of the relatively recent advent of CATV and CATV regulation.[4] Legislatures attempting to establish regulatory schemes for this medium were faced with a host of unknown factors mandating that a certain amount of flexibility be built into the regulating agency.

Through enactment of § 39-19-6 the Rhode Island Legislature specifically authorized the DPUC to regulate CATV operators in the public interest to prevent any detrimental consequences resulting from the medium. Certainly this authority includes regulation to protect the public from harm potentially caused by the natural monopoly a CATV operator acquires once certified for operation by the DPUC. By mandating provisions for community access, the rules in issue attempt to ensure that CATV operators will provide access for the expression of a diversity of viewpoints and thus be unable to exploit their communications monopoly. *Berkshire*, 571 F.Supp. at 984 n. 7.

It strains credibility to argue that the Legislature intended to hamstring the DPUC by providing it with authority to prevent detrimental consequences to the public with regard to only the seven categories mentioned in § 39-19-6. It is apparent to us that the Legislature could not foresee specifically the multitude of problems and areas for potential public harm that would result from the CATV medium. While it listed some areas of particular concern, it also set aside for its regulatory agency a reserve of power with the words "to prevent such operation from having detrimental consequences to the public interest." With this language, the Legislature unmistakably intended to equip the

DPUC with the authority to meet problems as they arose and fashion reasonable regulatory solutions.

To conclude otherwise, we would have to assume that the Legislature intended the absurd result that the DPUC would be forced to stand by impotently while CATV operators violated the public interest with impunity in any areas not covered by the enumerated categories of § 39-19-6. We cannot accept this argument. "No court will ever impute to the Legislature an intent to enact statutes devoid of logic or reason or one that achieves unreasonable consequences." *Davis v. Wood,* R.I., 427 A.2d 332, 336 (1981).

 We conclude that the scope of the DPUC's authority to regulate CATV operators is not limited solely to those categories mentioned in § 39-19-6, but extends to areas in which such regulation is necessary in the public interest to prevent "detrimental consequences" to the public. Regulations designed to prevent public harm through the exploitation of a monopolized medium clearly fall within this statutory authority. We therefore respectfully respond in the affirmative to the question certified to us by the Court of Appeals of the First Circuit.

BEVILACQUA, C.J., did not participate.

---

**4.** The Federal Communications Commission's first limited regulation of CATV was in 1962. Its first substantial regulation occurred during 1968–1970. *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 571 F.Supp. 976, 983 n. 5 (D.R.I.1983).