[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff Environmental Scientific Corporation (ESC) seeks judicial review of a final order of the Department of Environmental Management (DEM or the Department) pursuant to the Administrative Procedures Act, G.L. 42-35-15. The record and memoranda in the case state the following.
FACTS AND TRAVEL OF THE CASE
Plaintiff ESC, on behalf of Westerly Commercial Associates, owners of property in Westerly, Rhode Island, filed an Application to alter freshwater wetlands for the proposed construction of a commercial/retail complex to be called Westerly Plaza Phase II. Complaint, para. 2.[1] The Application (87-0557F) proposes construction of a commercial/retail complex consisting of buildings, paved parking areas and drainage structures along the south and west perimeters of the Aguntaug Swamp in Westerly. Hearing Officer's Decision at 1.
On April 12, 1989, DEM's Division of Water Resources denied issuance of a water quality certification and plaintiff appealed the denial. On May 17, 1989, DEM issued its denial of the Application and plaintiff duly appealed. The appeals were consolidated and hearings were conducted between September 25, 1989 and November 10, 1989. The parties filed post-hearing memoranda due on February 21, 1990. The hearing officer thereafter granted DEM's motion to reconvene and the testimony of Steven Moran, Chief, Groundwater and Freshwater Wetlands, was taken on April 13, 1990, concerning alleged contamination of wells in a neighboring area.
On August 22, 1990, the hearing officer reversed the department's decision. He ordered that the water quality certification and the Application to alter freshwater wetlands be granted. The director recused himself, and on November 2, 1990, Malcolm J. Grant, in his capacity as designated Director for DEM (hereinafter "DEM Director"), issued a final agency decision and order reversing the hearing officer's decision and order.
Plaintiff submits that the November 2, 1990 decision of the Department is:
 (1) In violation of constitutional or statutory provisions, (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and (6) Arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . . .
and urges this Court to reverse the decision of the Department and to order that the Application to alter freshwater wetlands be granted and that the water quality certification be granted.
PLAINTIFF'S ARGUMENT
Plaintiff cites Hicks v. Vennerbeck Clase, 525 A.2d 37
(R.I. 1987), in arguing that before rejecting the hearing officer's findings of fact, the Department must find that the hearing officer is clearly wrong because he made obvious error in judging witness credibility or overlooked or misconceived material evidence in reaching a credibility determination. Plaintiff maintains that the aforementioned did not occur in the instant matter. To conclude otherwise would give the Director "veto power" over the hearing officer's recommended decision, thereby rendering the administrative hearing process itself a nullity. Id. at 12.
Plaintiff states that Brian Tefft, Supervisor for the Application Program at the DEM Freshwater Wetlands Section, acknowledged on cross-examination that no Modified Golet Evaluation (M.G.E.) of the subject wetland had been conducted subsequent to the construction of Westerly Plaza Phase I. Id.
at 15. ESC maintains that Tefft's testimony that there would be a reduction in the numerical ranking of a M.G.E. if Phase II were constructed, is speculative and not to a reasonable degree of scientific certainty. ESC also urges that neither the Freshwater Wetlands Act (the Act), nor the rules and regulations thereto, provide for the denial of an application to alter freshwater wetlands, on the grounds of a lower post-construction M.G.E., if the wetland would still fall within the "unique" category. Id.
at 14-17. Plaintiff further argues that Mr. Tefft's opinions were made without a reasonable degree of scientific certainty. Id.
at 18-20.
ESC next argues that the Department's finding that the proposed project would result in the loss of water in the subject site cannot serve as a legal ground for the denial of the water quality certification, because the Act and the rules and regulations thereto do not prohibit mere loss of water due to construction. Id. at 22. Their position is that there will be no adverse affect to existing surface water quality if the proposed project is constructed. Id. at 22, 25. Although the classification of the water in the subject wetland is Class B, ESC claims that the subject water does not conform to the Class B criteria. Id. at 23-24.
ESC maintains that the proposed development will not cause degradation of a "unique" and "valuable" freshwater wetland. One of their expert's (Scott Hobson) pre and post project Wetland Evaluation Technique (WET) evaluations indicated no change in any of fourteen (14) different wetland functions and values. Id. at 30-36. Another expert (Robert Erickson) testified that the results of a Habitat Evaluation Procedure (HEP) demonstrate that the proposed project would not have a significant impact on available wildlife habitat. Id. at 36-42. Because the subject wetland is small (.9 acres), urban in character, contains a limited wildlife population, is mostly under private ownership, and is of "low" social significance for recreation, its value would not be reduced according to ESC.
ESC's final claim is that the proposed project would not result in a discharge of pollutants into state waters and a subsequent degradation of water quality. Id. at 47. It is their position that any increased pollution into the Aguntaug Swamp will have negligible impact on surface water and groundwater quality, because a wetland is capable of taking considerable loadings of pollutants. Id. at 48.
DEFENDANT'S ARGUMENT
The Department asserts that pursuant to Hicks v.Vennerbeck, supra, the Director in the instant case must conduct, in essence, a de novo review, making his own findings of fact and drawing his own conclusions of law.
DEM argues, relying upon the testimony of Brian Tefft, that the proposed project will cause degradation and reduction in value of unique and valuable wetland. Mr. Tefft resolved that the destruction of 2.92 acres of wetland would raise the percentage of urban surroundings to greater than 10%, which necessarily degrades and reduces the value of the unique and valuable subject wetland. DEM relies upon Rule 5.03(c)(6) and (7) of the DEM Rules and Regulations Governing the Enforcement of the Freshwater Wetlands Act (hereinafter F.W. Wetlands Reg.) which requires denial of an application to alter freshwater wetland if degradation or reduction in value will occur.
Defendant disputes plaintiff's position that the loss of nearly three (3) acres of unique and valuable wetlands is somehow acceptable because the remaining Aguntaug Swamp wetlands complex will remain "unique" and "valuable." Id. at 21. Defendant maintains that the Act and Rules and Regulations do not contemplate "incremental destruction", but instead require analysis of the "cumulative impact" of the proposed project.Id. at 25, Defendant offers the testimony of Brian Tefft concerning "cumulative degradation" and the impropriety of selecting invisible bounds to a natural wildlife habitat. Id.
at 23-25. Defendant also relies on its wildlife evaluation, which acknowledges the subject wetlands complex (Aguntaug Swamp) as the second largest in the state and within the top three in terms of diversity cover types and undeveloped and natural character.Id. at 24.
DISCUSSION
The Administrative Procedures Act (General Laws — Title 42, Chapter 35) provides that "[a]ny person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter." G.L. 42-35-15(a). Generally, judicial review is confined to the case record. G.L.42-35-15(f). In addition, "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." G.L. 42-35-15(g). Thus a trial justice's "review in this situation [is] limited to determining whether the findings of the director are supported by legally competent evidence." Blue Cross and Blue Shield of Rhode Island v. ThomasJ. Caldarone, 520 A.2d 969, 972 (R.I. 1987) (citations omitted). In accordance with the statute, the court:
 may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
G.L. 42-35-15(g).
Plaintiff urges that the decision of the DEM hearing officer, who found in plaintiff's favor, must be accorded great deference by the Director in reaching a final decision and order. This argument clearly ignores the plain language of the applicable statute:
 After due consideration of the evidence and arguments, the [DEM] hearing officer shall make written proposed findings of fact and proposed
conclusions of law which shall be made public when submitted to the director for review. The director may in his or her discretion adopt, modify or reject such findings of fact and/or conclusions of law provided, however, that any such modification or rejection of the proposed findings of fact or conclusions of law shall be in writing and shall state the rationale therefor.
G.L. 42-17.7-6(1) (emphasis added).
The Fresh Water Wetlands Act expresses the Rhode Island public policy "to preserve the purity and integrity of the swamps, marshes, and other fresh water wetlands of this state." G.L. 2-1-19. Any alteration to fresh water wetlands must first be approved by the DEM director; approval will be denied if it "would not be in the best public interest." G.L. 2-1-21.
The proposed development is a commercial retail complex that requires the construction of buildings, paved parking areas, and drainage structures along the south and west perimeters of the Aguntaug Swamp wetlands complex. Approximately one acre of actual, biological wetland and approximately two acres of jurisdictional wetland (buffer zone) would need to be filled. All or some of this area is subject to storm flowage. The proposal further requires the diversion of 380 feet of existing river bed through a four foot by eight foot concrete culvert and the diversion of 400 feet of intermittent stream through a forty-eight inch culvert.
The Rules and Regulations Governing the Enforcement of the Fresh Water Wetlands Act provide authority to the DEM Director to deny a proposed alteration if, in his opinion,
 such alteration will cause random, unnecessary and/or undesirable destruction of fresh water wetlands including, but not limited to:
 (6) Degradation of the natural character of any "unique" wetland (see Section 7.06).
 (7) Reduction of the value of any "valuable" wetland (See Section 7.06).
F.W. Wetlands Reg. 5.03(c)(6) and (7). The record evidences the fact that, as plaintiff has stipulated, the Aguntaug Swamp wetlands complex, including the subject site, is "outstanding" wetland and is a "unique" and "valuable" wetland.
The DEM Director decided that the "inevitable incremental degradation" to the subject "unique" and "valuable" wetlands that would result from the proposed development is contrary to R.I. law, regulations and public interest. Final Decision, p. 4. Thus he concluded that de minimus degradation, following which the subject wetland remained "unique" and "valuable," was an impermissible result of the proposed development. He further noted the total destruction and permanent loss of approximately three acres of outstanding wetlands including wildlife species, habitat, and flora.
Upon review, this Court determines that the DEM Director's rationale is not subject to reversal or modification under the standards set forth in G.L. 42-35-15(g). His decision is based on the testimony and evidence contained in the hearing record. Moreover, the decision is grounded in the DEM Director's well-stated interpretation of applicable state law, regulations and public policy. In so holding, the court recognizes that "while not controlling, the interpretation given a statute by the administrative agency is entitled to great weight." BerkshireCablevision of R.I., Inc. v. Burke, 488 A.2d 676, 679 (R.I. 1985) (citations omitted).
The DEM Director rejected plaintiff's contention that it was permissible to alter (i.e., develop and destroy) approximately three acres of outstanding wetland because approximately 2000 acres of outstanding wetland would still remain. He determined that state law, regulation, and public policy did not permit such segregation and segmentation.
The DEM Director further bases his decision on the Water Quality Regulations for Water Pollution Control. Pursuant to these regulations, discharge of pollutants shall not result in additional degradation of any waters already below the assigned water quality standard. W.Q. Reg. 7.2. In addition, the state's antidegradation policy requires that existing water uses and quality be maintained and protected. W.Q. Reg. 17(a). The record reflects the fact that the subject site is not currently in compliance with its water quality classification. The DEM Director found that construction of the proposed project "will introduce additional pollutants and polluted stormwater runoff into . . . the subject site and further degrade its quality." Final Decision, Finding of Fact #13. He also concluded "[t]he proposed alteration will cause a reduction in the ability of a wetland tributary to a public water supply to remove pollutants from surface water and must, therefore, be denied pursuant to Section 5.03(c)(5) of the [F.W. Wetlands] Rules." Final Decision, Conclusion of Law #6. Once again, applying G.L. 42-35-15(g) and according great weight to the interpretation of public policy concerning water quality, the Court concludes that the DEM Director's decision should be upheld.
CONCLUSION
Accordingly, the Court affirms the Final Agency Decision and Order of the Director of the Department of Environmental Management. Counsel shall prepare an appropriate order for entry.
[1] WCA's Application had formerly been amended to divide the proposed construction project into two phases — Phase I and II. Defendant's Memo., p. 1-2. Phase I was held to be outside DEM's jurisdiction. Id.