DECISION
Plaintiff, P.C.M., Inc.(P.C.M.), appeals the November 21, 1997 decision of the defendant, Minority Business Enterprise Certification Review Committee (CRC) of the Department of Administration, in which it denied the plaintiff's application for certification as a "Woman's Business Enterprise (WBE)," pursuant to R.I.G.L. 1956 (1997 Reenactment) §§ 37-14.1-6 and37-14.1-7. Plaintiff seeks judicial review in this Court under the provisions of the Rhode Island Administrative Procedures Act (APA), § 42-35-15.
Plaintiff, through its president and treasurer, Regina C. Parry (Regina), applied for certification as a WBE on May 29, 1997. A site review visit was conducted by a Contract Compliance Officer (CCO) of the CRC on Tuesday, August 26, 1997. After the site review visit, the CCO, on October 1, 1997, recommended that the plaintiff's application be denied. Plaintiff was notified on October 28, 1997 that its application was tentatively denied, pending a hearing, which was conducted on November 18, 1997. After giving Regina and her husband, Russell G. Parry (Russell), and their attorney an opportunity to be heard, the CRC voted (3 nays, one abstention, and one in favor) to deny the application. The CRC notified the plaintiff of the decision on November 21, 1997. Thereupon, it sought judicial review from this Court.
P.C.M. describes itself as a company that offers services "to design, build, construct and/or manage a construction project." According to P.C.M.'s articles of incorporation, Regina is its president and treasurer, and Russell is its vice president and secretary. The company is owned by Regina (55 percent) and her husband, Russell, (45 percent). Mrs. Parry contributed $40,000 in cash and $125,000 in securities to the business. Mr. Parry's contribution consisted entirely of "sweat equity." Mrs. Parry is clearly the primary owner of the company.
Within P.C.M., Regina is responsible for making financial decisions, negotiating bonds and insurance, hiring and firing, along with managing and signing payroll. Both Russell and Regina are responsible for marketing and sales and have signatory authority over P.C.M.'s business accounts. Regina has a Bachelor of Science Degree from the University of Rhode Island with a focus in finance and management. Her work experience from 1983 to 1995 was in the travel business.
According to Russell's resume, he is responsible for project estimating, planning and overall management of the company. He has over 23 years of experience in the construction management industry, during which he was a "hands-on manager" for projects dealing with biotechnical, pharmaceutical, chemical, major wastewater treatment, and process manufacturing facilities. He has an Associate Degree in Business Administration and an Associate Degree in Construction Management.
During the site visit, the CCO learned that day-to-day operations of the company consist of bid processing, project negotiations and overseeing existing projects. As a result of her site visit and the plaintiffs application, the CCO concluded that Mr. Parry "clearly demonstrates more hands-on experience in the construction field" than Mrs. Parry. The CCO observed that "if Mr. Parry were not performing his functions and not in the position he is in at present, Mrs. Parry would not be able to sustain P.C.M. proficiently." As a result, the CCO recommended that the plaintiffs certification be denied because of Regina's lack of day-to-day control of the company.
The hearing focused on three major areas. First, the plaintiff explained that a construction management company was not the same as a construction company. Construction management involves the financial aspects of putting a construction team together through the competitive bidding process and then managing that team to complete a project. Throughout the hearing, members of the CRC continued to ask questions about this difference.
Secondly, the hearing looked into Regina's construction experience before P.C.M. was created. Regina stated that she worked as a teenager for her father's construction company doing payroll and government paperwork tasks. She stated that she only had a "peripheral position" in her dad's company. She has never held a position in any other construction firm.
Lastly, CRC members wanted to know how P.C.M. obtained almost eight million dollars worth of contracts in less than three years. Regina explained that seventy percent of their work came through competitive bids and personal contacts. A CRC member suggested that while Mrs. Parry had the personal contacts, what sealed a construction management contract was the experience of her husband. That member said that people considered P.C.M. as: "Yes, we know her, but we know what he does."
The CRC rejected the plaintiffs certification application because it questioned whether Mrs. Parry has control over the managerial and operational functions of the company. The committee found that, although Mrs. Parry manages the financial decisions (including the payroll), negotiates bonds and insurance, and hires and fires employees and both Parrys share signatory authority for business accounts and marketing and sales responsibilities, nevertheless, Mr. Parry is responsible for preparing bids, estimating, negotiating contracts, and supervising field operations. The CRC concluded from the evidence that too much business reliance was placed on the non-majority owner, Mr. Parry. They decided that, if he was not performing his functions and not in his position in the business, Mrs. Parry would not be able to maintain the company.
Appellate jurisdiction for review of final decisions of administrative agencies is conferred on this Court pursuant to§ 42-35-15. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. § 42-35-15(g)(5) and (6).
"`Substantial evidence' has been defined as `such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Newport Shipyard v. R.I.Commission for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quoting Caswell V. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981).
While § 42-35-15(g) provides a general framework for judicial review, the Rhode Island Supreme Court's decision inBarrington School Committee v. R.I. State Labor Relations Board,608 A.2d 1126 (R.I. 1992), further limits the Superior Court's ability to modify an administrative decision:
 "The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision. The Superior Court is not to substitute its judgment on questions of fact for that of the agency whose actions are under review. This is so even in situations in which the court, after examining the certified record, might be inclined to view the evidence differently and draw different inferences from those of the agency below. If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." 608 A.2d, at 1138.
The Court's review should defer to the agency's interpretation of its own regulations. Berkshire Cablevision of Rhode Island. Inc.v. Burke, 488 A.2d 676, 679 (R.I. 1985) ("while not controlling, the interpretation given a statute by the administering agency is entitled to great weight").
WBE certification is controlled by regulations issued under the auspices of the Rhode Island "Minority Business Enterprise Act" (R.I.G.L. § 37-14.1-1 et seq.). According to §37-14.1-3(f), a "Minority Business Enterprise (MBE)" is small business concern, as defined by § 3 of the Federal Small Business Act, 15 U.S.C. § 632 and implementing regulations, which is owned and controlled by one or more minorities or women. "Owned and controlled" is further defined as a business in which: (a) at least 51 percent is owned by one or more minorities or women; and (b) management and daily business operations are controlled by one or more such individuals. The State Department of Administration is responsible for creating rules and procedures to implement this act provided that the rules are consistent with the Administrative Procedures Act and 49 C.F.R. § 23 of the Federal Regulations. § 37-14.1-6.
Section 2.00v of the June 1995 Rules and Regulations issued under authority of §§ 37-14.1-6 and 37-14.1-7 gives the power to certify WBE's to the CRC. Any business must meet all the criteria listed in Section 3.00 to be certified as a WBE including, "(4) . . . Women owners must possess control of the business and the power to direct or cause the direction of the management and policies of the firm and to make the day-to-day as well as major decisions on management, policy and operations." When a woman owner has control of the business for certification purposes is further defined by Section 3.03 of the Rules and Regulations. The pertinent regulation (3.03A.) states that the minority, disadvantaged or women owners must demonstrate that they have control over: (1) The day-to-day management of the business, and (2) the policy-making mechanism of the business. Section 3.03A. specifies six criteria that women owners must meet to illustrate substantial evidence of control over the power to direct the management and operations of the business. Two criteria are significant in this case:
 e. Have the capability, knowledge and experience required to make decisions regarding the particular type of work engaged in by the MBE.
 f. Have displayed independence and initiative in seeking and negotiating contracts, accepting and rejecting bids and in conducting all major aspects of the business.
The CRC had to decide whether Regina meets the required level of day-to-day control over P.C.M., taking into account the level of her husband's involvement in the company. The first criteria of § 37-14-1-3(f) is not an issue in this case because it is undisputed that Regina owns over 51 percent of the company. The Court needs to inquire whether in denying the plaintiffs WBE certification, the CRC decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; was arbitrary or capricious; or was characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In addition to certification for state contracts, the CRC is authorized to certify women businesses for the purposes of obtaining federal contracts. Although not controlling, interpretation of federal certification standards by federal courts is instructive, since Rhode Island's "Minority Business Enterprise Act" borrows statutory language from the Federal Small Business Act, 15 U.S.C. § 632 and implementing regulations in 49 C.F.R. § 23 of the Federal Regulations. Fleet NationalBank v. Clark, 714 A.2d 1172, 1180 (R.I. 1998) ("a state implicitly adopts the interpretation of a statute by the courts of a particular jurisdiction when it later borrows statutory language from that jurisdiction"). Under U.S. Department of Transportation standards, women owners must show that: (1) ownership and control is real, substantial, and continuing and shall go beyond the pro forma ownership of a firm as reflected in its ownership documents; (2) they possess the power to direct or cause the direction of the management and policies of the firm and to make day-to-day as well as major decisions on matters of management, policy, and operations; and (3) owners who are not minorities or women disproportionally responsible for the operation of the firm. 49 C.F.R. 23.53.
 Jack Wood Construction Co., Inc. v. U.S. Department ofTransportation, 12 F. Supp.2d 25 (D.D.C. 1998), is an important federal case that interprets § 49 C.F.R. certification requirements. In Jack Wood Construction, a United States DOT decision denying disadvantaged business enterprise (DBE) certification to a construction company solely on the basis of the female owner's lack of technical expertise was overturned. The plaintiff, Ms. Wood, relied on a non-minority owner for advice on the technical aspects of the bidding process. The court regarded "as wholly illogical the notion that technical expertise can be the sole factor in determining who `controls' a business enterprise." (Emphasis supplied.) If this Court accepts the rationale of Jack Wood Construction an agency cannot rely exclusively on the "lack of technical knowledge" of a minority/woman owner to deny certification without being "arbitrary or capricious." The record in this case, however, shows clearly that the CRC did not rely exclusively on Regina's lack of technical expertise in denying the application.
The plaintiff needed to produce "substantial evidence" both
of Regina's "capability, knowledge and experience" to make decisions concerning day-to-day operations and her ability to display "independence and initiative" in negotiating contracts regarding construction management, as required by Sections 3.03A.e. and f. During the site visit, the plaintiff revealed that day-to-day operations of its business consist of bid processing, project negotiations, and maintenance of ongoing projects. Every area of business that should have been conducted by Regina to meet the control requirement was carried on by her husband. Russell is responsible for estimating and preparing bids, negotiating contracts, and supervising field operations. He is responsible for these day-to-day operations and has operational control of the company because of his 23 years of experience in the construction management business. Although Regina controls the financial management aspects of the company, she does not have the capability and technical knowledge necessary to control the operational aspects without heavy reliance on her husband. In fact, she had no construction management experience before starting P.C.M. Her previous work experience was exclusively in the travel industry. She failed to obtain significant construction experience as a teenager, when she worked for her father's construction company. In addition, although Regina helps her husband solicit contracts and accept and reject bids, she displays no "independence and initiative" in preparing or negotiating contracts. That activity is exclusively controlled by her husband because of his experience with the construction contract process. There is no evidence in the record that shows that Regina could meet the requirements of Sections 3.03A.e. and f.
The requirement that Regina have enough minimal technical knowledge to control the operational aspects of P.C.M. is not arbitrary or capricious, considering the technical nature of the construction field and the fact that this lack of knowledge was not the only reason her certification was rejected. Regina's failure to display any "independence and initiative in seeking and negotiating contracts" is the other reason why the CRC rejected her application. She was shown to be too dependent on her husband's role in the operational aspects of the company. As a consequence, she fails the control requirements of Sections 3.03A.e. and f.
This conclusion by the CRC was based on the record which illustrates the work experience and responsibilities of the Parrys. Based on the evidence, the CRC properly denied the plaintiffs application for certification as a WBE.
This Court affirms the CRC's decision to deny WBE certification to the plaintiff. There is abundant evidence in the record to support the CRC's rejection of the plaintiff's application. The CRC's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence on the record as a whole, nor was the decision arbitrary or capricious. As such, the Court under § 42-35-15 is required to uphold the agency's decision.
The defendant will present a judgment for entry on reasonable notice to the plaintiff.