DECISION
Before the Court is an appeal from a decision of the Rhode Island Department of Human Services (DHS), denying the application of Milady Ramos (plaintiff) for General Public Assistance (GPA) medical benefits (G/Med). The plaintiff seeks a reversal of the DHS decision and a remand to the agency for further and action. In addition, the plaintiff requests a declaratory ruling on the applicability of an agency regulation. Jurisdiction is pursuant to G.L. 1956 §§42-35-15 and 42-35-7.
 Facts/Travel
In January 2000, the plaintiff applied to DHS for G/Med benefits. To support her application, the plaintiff submitted an agency medical form (MA-63), completed and dated January 14, 2000, by her physician, Dr. B. Naik. (Defendant's Exhibit at 4.) The MA-63 is "used to establish the existence of a mental or physical condition(s) that is preventing the individual from working, including full or part time work. The MA-63 form, completed by a licensed physician(s) pursuant to a physical examination, should demonstrate the effect the physical or mental condition has on the person's ability to work. The extent of the illness, injury or medical condition and recommendations for treatment or care are also solicited on the form. The applicant's physician may submit copies of the patient's medical records or a letter which includes all relevant information in lieu of or in addition to the MA-63. Clients may submit MA-63's [sic] from all their treating physicians in order to establish a comprehensive health profile." DHS regulation § 0608.10.05.
In the general comments section of the MA-63, Dr. Naik wrote "long history of joint pains and muscular discomfort. Needs rheumatology consult." Additionally, the plaintiff submitted an agency AP-70 form. (Defendant's Exhibits 7, 7a.) The AP-70 form "which is designed to be completed by the applicant, gathers information on the person's condition and how it affects day to day activities." DHS regulation § 0608.10.05. If an applicant completes an AP-70 form, the Department considers, in addition to the MA-63, the information thereon when determining whether the applicant meets the GPA eligibility criteria. Id. On or about February 1, 2000, DHS, having determined pursuant to DHS regulation § 608.10 that the plaintiff's medical evidence "did not establish that [applicant had] a medical condition, illness or injury that prevents full or part time work," denied G/Med benefits. (Defendant's Exhibit 2.) Subsequently, the plaintiff timely appealed the denial to the DHS Appeals Office. (Defendant's Exhibit 1.) On March 16, 2000, Ms. Ramos' advocate submitted additional medical documentation from the Providence Ambulatory Health Care Foundation (medical records). (Def's Exs. 5, 6.) An administrative hearing was held on March 20, 2000. The GPA supervisor testified that based on the medical evidence, including the MA-63 and medical records, as well as plaintiff's activity information, she failed to establish that she was incapacitated from doing any type of work for thirty days or longer. (Def's Ex. 14 at 7-23, Hearing Transcript, hereinafter Tr.) Thus, the plaintiff was considered employable and was denied G/Med benefits.
Referencing Dr. Naik's notation on the MA-63, the plaintiff's advocate requested that the hearing officer order the rheumatology exam pursuant to the GPA case. Additionally, he submitted into evidence a March 15, 2000 letter to the Office of Medical Review requesting that M[edical] A[ssistance] R[eview] T[eam] (MART) order the rheumatology examination. (Def.'s Ex. 9.) Submission of an application for GPA also triggered review of plaintiff's eligibility for Medical Assistance by the Office of Medical Review. (Tr. at 32.) On the day of the hearing, the plaintiff had informed her advocate that Medical Assistance had been denied. Id. at 33. The hearing officer took the request under advisement and reserved ruling on it.
By letter dated March 27, 2000, the hearing officer denied the request and informed the plaintiff's advocate that "the GPA Program does not have provision to pay for such consultative exams, and as outlined in GPA Policy Section 0608.10.05, the MART has the authority to require the individual to undergo further medical evaluations arranged by the Department." (Def's Ex. 10.) See DHS regulation § 0608.10.05, subsection entitled "Referral Process to Office of Medical Review (OMR)," regarding OMR's determination of eligibility for Title XIX Medical Assistance Benefits. The record remained open for submission of the parties' final arguments.
The plaintiff, in her post-hearing memorandum, notes that in addition to the Appeal Officer's March 27 letter of denial, the MART had also denied the rheumatology consult sought by the plaintiff's physician. Relying on DHS regulation § 110.55.20, the plaintiff contends that the hearing officer's determination that he did not have the authority to order the rheumatology consultation is incorrect. The plaintiff here refers to the `General Hearings and Complaint' section of DHS's regulations, § 110.55.20, which provides:
 "When the hearing involves medical issues such as those concerning a diagnosis, an examining physician's report, or a medical review team's decision, a medical assessment from someone other than the person or persons involved in the original decision is obtained, at agency expense, and made part of the hearing record, if the appeals office considers it necessary."
Further, he argues that the plaintiff's physician was unable to reach a diagnosis or assess her functional limitations without the consult. The plaintiff does not have medical insurance and cannot obtain the consult by her own means.The plaintiff had received Medical Assistance from April 1993 through September 1999. Tr. at 32.
In its closing argument dated April 5, 2000, the GPA supervisor reiterated the rationale for the denial of GPA benefits. (Def's Ex. 12.) Therein, the supervisor documented that although the MA-63 contained a diagnosis of "shoulder, back, knee pains," it lacked other diagnoses, supporting symptoms, diagnostic tests, prognosis, and evidence of hospitalization(s), physical functional limitations or mental limitations. He referenced the physician note regarding plaintiff's long history of joint pains and muscular discomfort and the need for a rheumatology consult. The supervisor also considered as pertinent a January 14, 2000 entry in the medical records. Concluding that the plaintiff did not meet the GPA eligibility criteria under § 0608.10.05, he noted that "the GPA medical program would pay only for medically necessary doctors' visits only for eligible recipients." Id. The supervisor also commented that the plaintiff had applied for medical assistance and the MART had denied the rheumatology consult. He suggested that the proper forum for pursuing the consult would be a Medical Assistance appeal.
In a written decision dated April 20, 2000, the hearing officer upheld the agency's decision that based on the evidence, the plaintiff did not have a medical condition that would prevent her from working. (Def.'s Ex. 13.) The hearing officer reasoned that the plaintiff had been suffering from numerous pains and had been under a physician's care; however, the hearing officer further noted that the documentary evidence lacked supporting symptoms, diagnostic testing data and prognosis.
Regarding the rheumatology consult request, the hearing officer acknowledged his discretionary authority to order diagnostic exams. Without addressing § 110.55.20, he reiterated that the GPA program does not have the provisions to pay for such exams and referred to the MART's authority to order exams as stated in DHS regulation § 0608.10.05. Having learned from the plaintiff's post-hearing memorandum that the MART had denied the consult, the hearing officer advised that the issue should be addressed in a MART hearing. The plaintiff was notified, and the instant appeal ensued.
The plaintiff asks this court to (i) "reverse and remand the decision, ordering the hearing officer to determine whether or not the requested exam is necessary to a determination of plaintiff's GPA eligibility, and if so, to order that exam, have the results made part of the record, and issue a new hearing decision," (ii) "declare that § 110.55.20 grants the hearing officer the authority to order a medical examination at department expense and that this section is applicable to GPA cases," (iii) "grant such other relief as the court deems just and appropriate, including an award of costs under R.I.G.L. § 42-92-1 et seq." (Complaint at 2-3.)
 Standard of Review
This court's review of the subject DHS decision is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to this section, this Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."
Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000) (quoting Barrington School Committee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993) (quoting Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1082-83 (R.I. 1988)). In conducting its review, this Court is precluded from substituting its judgment for that of the agency as to the weight of the evidence on questions of fact, Center for Behavioral Health v. Barros,710 A.2d 680, 684 (R.I. 1998), even when this Court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnston Ambulatory Surgical Associates, Ltd., 755 A.2d at 805 (quoting Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board, 650 A.2d 479, 485 (R.I. 1994)). This Court is required to uphold an agency's decision if competent evidence exists in the record. Rhode Island Public Telecommunications Authority, 650 A.2d at 485. However, this Court may "reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion."
Johnston Ambulatory Surgical Associates, Ltd., 755 A.2d at 805 (quoting Barrington School Committee, 608 A.2d at 1138 (citing G.L. 1956 § 42-35-15(g))). Although not controlling, "the interpretation given a statute by the administrating agency is entitled to great weight." Berkshire Cablevision of Rhode Island, Inc. v. Burke,488 A.2d 676, 679 (R.I. 1985) (citations omitted).
Moreover, "an agency's construction of its own regulations is entitled to substantial deference." Martin v. Occupational Safety and Health Review Commission, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L. Ed.2d 117 (1991).
 General Public Assistance
The DHS is responsible for the management of state and federally funded public assistance programs, including the GPA program. The GPA is a state funded program created and governed by state law. G.L. 1956 § 40-6-1
et seq. The purpose of the GPA program, as effectuated in § 40-6-3, is to provide general public assistance to eligible residents of Rhode Island who do not qualify for a federal/state program [e.g., SSI or Title XIX medical assistance] but who are in need of financial and medical assistance. To be eligible for GPA, an individual must have an incapacity that is reasonably expected to last for a period of thirty (30) days . . . and which precludes the individual from working.
G.L. 1956 § 40-6-3.1(b)(2). Pursuant to its statutory authority, DHS promulgates regulations for determining eligibility for GPA benefits. G.L. 1956 § 40-6-2. Title 40, Chapter 6, of our General Laws, entitled "Public Assistance Act," establishes the legal basis for the GPA program. DHS regulation § 0600.05 provides in pertinent part:
 "This program covers eligible individuals; such individuals are eligible only for medical benefits. To be eligible for GPA, an individual must have an illness, injury, or medical condition as defined in Section 608.10.05. GPA shall not be provided to any individual who has been determined eligible for SSI or to any individual who is eligible or who would, but for income and resources, be eligible for Family Independence program cash assistance. GPA shall not be provided to any individual found eligible for the Federal/State Medical Assistance Program."
In this case, the DHS relies on § 608.10 of its regulations to support the decision to deny plaintiff G/Med benefits. GPA medical benefits are furnished to individuals who are eighteen years of age or older provided that:
 ". . . all other eligibility requirements of the GPA regulations as set forth in the DHS Manual are met; and, the individual is determined by the [DHS] to have an illness, injury or medical condition as documented by a physical examination by a licensed physician, that is reasonably expected to last for a period of at least thirty (30) days from the date the application for [GPA] is filed with the Department, and which precludes the individual from working, including full or part time work. . . .; the individual has, within thirty (30) days of the application for [GPA] or notice from the Department, applied for and cooperated in the determination of eligibility for benefits under the Title XVI Supplemental Security Income (SSI) Program and/or the Title XIX Medical Assistance Program, if the applicant or recipient is determined by the Department to be potentially eligible for benefits from those programs. . . ." DHS Manual, § 0608.10.
 DHS regulation § 0608.10.05 provides in pertinent part:
 "Determinations of illness, injury or medical condition which preclude an individual from work for purposes of GPA Medical eligibility will be made by the GPA supervisor. An individual must have an illness, injury or medical condition, as documented by a physical examination by a licensed physician, that is reasonably expected to last for a period of at least thirty (30) days from the date of application for [GPA] and which precludes the individual from working, including full or part time work. Eligibility for [GPA] will not exist if an illness, injury or medical condition which precludes work cannot be reasonably verified. A decision on the application for [GPA] must be made within thirty (30) days of the Department's receipt of a completed application."
According to the DHS, the plaintiff did not establish a medical condition, illness or injury rendering her unemployable for a period of thirty days or longer. The plaintiff contends that the sole issue is whether the hearing officer has the authority to order a medical evaluation at agency expense where the claimant seeks GPA and the hearing involves medical issues.
The record demonstrates that DHS substantially based its determination on the plaintiff's MA-63, AP-70 and medical records. A January 14, 2000 entry in plaintiff's medical records provided that the plaintiff had been "seen in the past for multiple pains; pain back, right knee; X-ray normal right knee; back congenital fusion T12, L1 and L2; no other abnormalities; complains of right shoulder discomfort; wants GPA form filled; has complained about vague aches for long time." The MA-63 documented plaintiff's diagnosis as "shoulder, back, knee pains"; however, it lacked other diagnoses, supporting symptoms, diagnostic test results, prognosis, and evidence of hospitalization(s), physical functional or mental limitations. The functional limitation section was blank; however, the `other restrictions' section contained the notation "see general comments." The general comment section had the notation "long history of joint pains and muscular discomfort. Needs rheumatology consult."
According to the AP-70, the medical problems that prevented the plaintiff from working are "hips, both legs, entire right leg, right arm, shoulder; lower and upper back; stomach; headache." It indicated that she performed household activities, including cooking, doing dishes, vacuuming, dusting, making beds — with assistance. Further, the AP-70 indicated that her last employment ended in 1988. During the hearing, the plaintiff testified about her multiple pains, limited abilities, medications, employment history and living situation. Although she stated that physician appointments occur every one to three months, she did not submit any corroborating evidence of ongoing medical treatment.
The hearing officer found that the agency had determined that the plaintiff "did not have a medical condition that would prevent her from working." (Administrative Hearing Decision, April 20, 2000 (hereinafter Decision) at 4.) The record included the plaintiff's MA-63, AP-70 and medical records. Additionally, the hearing officer noted that the plaintiff testified regarding her various pains, her difficulty moving and her inability to perform her duties at her previous employment, and that her medical appointments occur at least every one to three months. Id. Having considered the evidence before him, the hearing officer reasoned that
"The documentary evidence . . . is not indicative of any supporting symptoms, diagnostic testings, not prognosis. The [medical records] provided information relative to the appellants [sic] previous appointments. There is one mention in the medical history dated January 14, 2000, indicating the appellant was seen in the past for numerous pains in her right knee and her back, and that an xray of the right knee showed no abnormalities, and an xray of the back showed congenital fusion of T12, L1, L2, and also noted the appellant wanted her GPA form and that she complained of vague aches for a long time. . . . It is the opinion of this hearing officer that if the appellant has been suffering from numerous pain, and has been seeing a physician every one (1) to three (3) months for said pain, diagnostic testing to rule out or pinpoint the reason for the appellants pain should have been an ongoing part of the appellants medical treatment plan. The appellant did not submit any corroborating evidence to support her testimony regarding ongoing treatment." Id. at 4-5.
The agency decision was not clearly erroneous in view of the reliable, probative and substantial evidence before it.
 Request for Declaration
Pursuant to § 42-35-7 of the Rhode Island General Laws, a plaintiff may request a declaratory judgment in instances where either a contested rule or its application threatens his or her legal rights.
Here, the plaintiff seeks a declaration that DHS regulation § 110.55.20[1] applies to GPA hearings and that a hearing officer has authority to order a consultative examination at department expense. She contends that the hearing officer ruled that he lacked authority under DHS rules to order a medical exam at agency expense in this GPA case.
Contrary to the plaintiff's contention that the hearing officer stated that he lacked the authority to order a medical consultation, he acknowledged his discretionary authority and denied the request stating,
"The RILS representative argued in his post hearing memorandum, that the hearing officer has the authority to order diagnostic exams, when it is determined by the hearing officer to be necessary. This hearing officer is well aware of his authority and as such denied the request for a Rheumatology consult, having noted the fact that the GPA program does not have the provisions to pay for such exams, and that the MART has authority to order such exams, also noting the GPA policy . . . Section: 0608.10.05." (Decision at 5.)
The hearing officer was aware that the plaintiff had also requested that MART order the rheumatology consult. Subsequent to the hearing officer's March 27 letter denying the consult, the hearing officer learned from the plaintiff's post-hearing memorandum that the MART had denied the consult. As indicated in the hearing officer's decision, the plaintiff had recourse through a MART appeal.[2] Further, as provided in § 608.10.05,[3] the plaintiff had submitted a MA-63 which was completed by her physician, an AP-70 and additional medical documents to establish her incapacity. As previously stated, a review of the record demonstrates that the hearing officer had before him competent evidence upon which to conclude that the plaintiff did not have a medical condition that precluded her from working and that the rheumatology examination was not necessary to his determination. Specifically, the plaintiff's physician did not document any physical functional or mental limitations, a prognosis, or any diagnosis other than shoulder, back and knee pains. (Def.'s Ex. 4.) The hearing officer reasoned that
 "It is the opinion of this hearing officer that if the appellant has been suffering from numerous pain, and has been seeing a physician every one (1) to three (3) months for said pain, diagnostic testing to rule out or pinpoint the reason for the appellants pain should have been an ongoing part of the appellants medical treatment plan. The appellant did not submit any corroborating evidence to support her testimony regarding ongoing treatment." (Decision at 4-5.)
Accordingly, the hearing officer's finding that the plaintiff was employable without his ordering the requested rheumatology examination did not constitute an abuse of discretion. See, e.g., Woodbury v. Zoning Board of Review, 78 R.I. 319, 324, 82 A.2d 164, 167 (1951) (citations omitted) ("It is well settled that the decision of a zoning board of review, based on the exercise of its discretion, will not be set aside . . . unless it is so arbitrary and unreasonable as to show a clear abuse of discretion.").
Whether or not to grant relief pursuant to G.L. 1956 § 42-35-7
according to which a party may seek a declaratory judgment under G.L. 1956 § 9-30-1 is within the discretion of the court. In this instance, this Court declines to render the requested declaration. Having affirmed the decision of the agency pursuant to G.L. 1956 §42-35-15, this Court has resolved the controversy and has no need to declare the rights of the parties. For the foregoing reasons, the plaintiff's request for declaratory judgment is denied.
After a review of the entire record, this Court finds that the decision was not in excess of the statutory authority of the agency, and was not clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. The agency decision was not arbitrary or capricious or characterized by abuse of discretion or affected by error of law. Substantial rights of the plaintiff have not been prejudiced. Accordingly, the appeal to this Court by Ms. Ramos is denied, and the decision of the DHS is affirmed. Because the DHS is the prevailing party, the plaintiff's request for costs and fees is denied.
Counsel shall prepare and submit an appropriate form of judgment in accordance herewith.
[1] Section 110.55.20, located in the `General Provisions' section of the DHS Manual, under § 110 `Complaints and Hearings,' subsection § 110.55 entitled `The Hearing Procedure,' is entitled "Medical Assessment." It provides the DHS appeals office with discretionary authority to obtain a medical assessment when a hearing involves medical issues. See supra note 11, § 110.55.20.
[2] By statute and regulation, GPA is available only to applicants who do not qualify for state/federal forms of assistance.
[3] See supra notes 2 and 3, pertinent parts of § 608.10.05.